Jeff SIMON, as Custodian for Gail Nina Simon, Under the New York Uniform Gifts to Minors Act, Plaintiff,

v.

The NEW HAVEN BOARD & CARTON COMPANY, Incorporated, Edwin W. Miller, Sterling R. Chatfield and William B. Gumbart, Defendants.

Civ. No. 10425.

United States District Court
D. Connecticut.

Feb. 8, 1966.

Kalman A. Sachs, Sachs, Sachs, Giaimo & Sachs, New Haven, Conn., Herbert Scharf, Bobroff, Olonoff & Scharf, New York City, for plaintiff.

John D. Fassett, Wiggin & Dana, New Haven, Conn., for defendants.

ZAMPANO, District Judge.

This is a derivative suit brought on behalf of the New Haven Board & Carton Company, Incorporated ("New Haven") by plaintiff Jeff Simon, custodian for a minor who is a stockholder in the company. The defendants are members of the board of directors of the company. Named as co-conspirators but not defendants [1] are Leon J. Simkins, a director and President, Morton H. Simkins, a director, Executive Vice President and Treasurer, and Dorothy Simkins, another director.

The defendants move to dismiss Count II of the Second Amended Verified Complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

The transaction complained of concerns the acquisition by New Haven of certain Florida corporations owned by the Simkins. Plaintiff contends the merger was authorized by the shareholders of New Haven on the basis of falsified and misleading reports and proxy statements which were prepared and distributed under Simkins' direction with full knowledge of the defendants. As a result of an undervaluation of New Haven and the overvaluation of the acquired corporations the value of the stock issued by New Haven pursuant to the authorization was $2,000,000 in excess of the consideration received. An added consequence of the merger is the Simkins now control 76% of the voting stock of New Haven compared with 33% prior to the consolidation.

The two counts of the complaint are based on the same operative facts. The first count asserts a common law action for relief under state law and, there being diversity of citizenship, federal jurisdiction is not contested by the defendants in the instant motion.

Jurisdiction of Count II rests on Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, granting exclusive federal jurisdiction over suits brought pursuant to the provisions of that Act. The question raised by defendants' motion is whether the facts alleged in Count II state a claim under § 10(b) of the Act, 15 U.S.C. § 78j(b), and Rule 10b–5, the general anti-fraud rule promulgated thereunder by the Securities and Exchange Commission.

Rule 10b–5 provides, *inter alia,* that it is unlawful "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." [2]

Since its passage in 1942, Rule 10b–5 has received significant judicial amplification as a basis for civil liability. Fleischer, Federal Corporation Law: An Assessment, 78 Harv.L.Rev. 1146 (1965); Comment, Civil Liability Under Section 10B and Rule 10B–5, 74 Yale L.J. 658 (1965); Ruder, Pitfalls in the Development of a Federal Law of Corporations, 59 Nw.L.Rev. 185 (1964). It is now settled that a derivative action may be brought on behalf of the corporation under the Rule, Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2 Cir.1951); Ruckle

---

1. On May 21, 1965, the Court granted without objection the motion of Leon J. Simkins, Morton H. Simkins, and Dorothy Simkins, who were named among others as defendants, to dismiss because of improper venue.

2. See 17 C.F.R. § 240.10b–5 (1964):
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

   (a) To employ any device, scheme, or artifice to defraud.
   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

v. Roto American Corporation, 339 F.2d 24 (2 Cir.1964), that the corporate issuance of stock is a "sale" within the meaning of the Rule, Ruckle v. Roto American Corporation, supra at 27; Hooper v. Mountain States Securities Corp., 282 F.2d 195, 200–203 (5 Cir. 1960), and that appropriate operative facts may support both common law and federal causes of action. O'Neill v. Maytag, 339 F.2d 764 (2 Cir.1964).

■ While recognizing the current trend of the authorities, defendants argue reasonable limits would be breached if the Rule is applied to a fraud upon a corporation when acting through its stockholders. The Court disagrees. The Rule provides civil redress for damage to a corporation resulting from deception in the disclosure of information which affects corporate decisions in the purchase and sale of securities. In *Ruckle,* members of the board of directors were deceived by the fraudulent failure to disclose information; here, stockholders were. Both cases involve fraud upon the decision-making body of the corporation. The result in both is the same— injury to the corporation. In this Court's opinion the difference in the acting corporate body is not sufficient to warrant a result dissimilar to *Ruckle.* All information reasonably relevant to a rational investment must be disclosed to the decision-making body, whether that body be composed of directors, officers or shareholders of the corporation. See, Eagle v. Horvath, 241 F.Supp. 341; 241 F.Supp. 345, 347 (S.D.N.Y.1965).

O'Neill v. Maytag, 339 F.2d 764 (2 Cir. 1964), does not furnish the precedent which defendants seek. In that case the question posed was whether "it is sufficient for an action under Rule 10b–5 to allege a breach of * * * general fiduciary duties *where the breach does not involve deception."* 339 F.2d at 767 (emphasis added). Since the complaint did not allege facts that demonstrated an Exchange Act fraud on the corporation, the Court of Appeals held dismissal of the action was proper.

■ In the instant case, however, the plaintiff states facts supporting the claimed deception particularizing among other things: the failure to disclose the existence of a $100,000 profit, the concealment of the value of New Haven's tax loss carryforward, the failure to credit the liquidation value of the company's assets, goodwill and recent improvements, and the painting of an overly pessimistic picture of New Haven's future. Clearly the complaint alleges more than a breach of the general fiduciary duties of the corporate officers and directors; it discloses facts which, taken as true for the purpose of this motion, involve deceit and fraud associated with the sale of the securities.

■ Lastly, the defendants deny the corporation is a defrauded party. At most, it is claimed, the transaction has resulted in a dilution of the value of the individual shares which may support an individual shareholder's cause of action but does not constitute corporate harm essential to a Rule 10b–5 action. Cf. Hoover v. Allen, 241 F.Supp. 213, 226–229 (S.D.N.Y.1965). On the other hand, plaintiff asserts the stock issued by New Haven, $2,000,000 in excess of the consideration received, should be treated as any other asset such as cash. *Ruckle,* citing with approval Judge Brown's statements in Hooper v. Mountain State Securities Corp., 282 F.2d 195, 203, cert. denied 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693, lends clear support to plaintiff's position:

"Considering the purpose of this legislation, it would be unrealistic to say that a corporation having the capacity to acquire $700,000 worth of assets for its 700,000 shares of stock has suffered no loss if what it gave up was $700,000 but what it got was zero. If—as we very much doubt—accountants would support any such contention as a consequence of the esoteric mysteries of the double entry system, Liston Zander Credit Co. v. United States, 5 Cir., 1960, 276 F.2d 417, 422, the law with

its eye on reality would have to part company with such purists."

Another element of corporate loss is that "(i)n one sense the company has not parted with the shares; they still represent claims against it, and claims fraudulently obtained." Fleischer, Federal Corporation Law: An Appraisal, supra, at 1161. An unfavorable investment as the one alleged here, moreover, will often depress public capital investment in the company and make institutional borrowing more difficult or at higher rates. Thus, in a real sense the company's means of financing may be restricted as a result of the transaction.

For these reasons, defendants' motion to dismiss is denied.[3]

---

3. Since § 10(b) supports federal jurisdiction, it is unnecessary to reach plaintiff's alternative ground, § 14(a) of the Act. Parenthetically, that section appears to be a sound basis for jurisdiction also. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).