GLOBUS, INC., Plaintiff,

v.

David B. JAROFF, Rita Darer, Alan Silver and Techmation Corp., Defendants.

No. 66 Civ. 2656.

United States District Court
S. D. New York.

Jan. 19, 1968.

Mortimer M. Lerner, New York City, for plaintiff.

Louis Kipnis, New York City, for defendants Jaroff and Techmation Corp.

MANSFIELD, District Judge.

This is a motion to dismiss as moot this stockholders' derivative action brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and Rule 10B–5, 17 C.F.R. § 240.10b–5, and a cross-motion by plain-

tiff for the award of counsel fees. The complaint alleges that the individual defendants, the directors of Techmation Corporation (hereinafter "Techmation"), used misleading proxy material to obtain majority stockholder approval required by N.Y.Bus.Corp.Law, McKinney's Consol.Laws c. 4, § 505(d) (McKinney's 1967) of a ten-year restricted stock option agreement with its president, defendant Jaroff, which required sale to him of newly issued shares at a price substantially lower than market.

On March 16, 1967, Judge Croake denied defendants' motion to dismiss pursuant to Rule 12(b) and 23.1, F.R.C.P., for lack of jurisdiction, failure to state a claim upon which relief may be granted, and lack of fair and adequate representation by plaintiff of stockholders similarly situated. 266 F.Supp. 524 (S.D.N.Y.1967). Judge Croake upheld plaintiff's right to maintain a derivative action under § 10(b) on behalf of Techmation as the issuer of its own stock, and concluded that the complaint "set forth with sufficient clarity and particularity a claim of deception", 266 F.Supp. at 529, and that "causation is a matter to be developed and proved at trial." 266 F.Supp. at 530.

On July 7, 1967, Judge Bonsal denied plaintiff's motion for summary judgment, 271 F.Supp. 378 (S.D.N.Y.1967), on the ground that although plaintiff had established that the individual defendants, in soliciting proxies to obtain approval of the option agreement, failed to furnish material information[1] which operated as a fraud or deceit upon Techmation and its stockholders in connection with the purchase or sale of securities and that such omissions constituted a violation of § 10(b) and Rule 10B–5, it did not appear whether the violation was causally related to the ratification of the option agreement. Judge Bonsal held,

> "plaintiff need not establish causation in a strictly mathematical sense. * * It may be that where any element of a corporation's decision making body is not furnished with all material information relevant to a proposed transaction, causation will be inferred," 271 F.Supp. at 381,

and denied the motion "without prejudice to its renewal when all facts bearing on the element of causation have been developed through discovery or otherwise" 271 F.Supp. at 381.

On August 9, 1967, Jaroff's deposition, taken by plaintiff to establish facts on the issue of causation, disclosed that

> (1) on July 2, 1966, the date of the stockholders' meeting in question, 249,057 shares of Techmation stock were outstanding, of which 124,529 shares constituted a majority;

> (2) of the 136,237 shares voted in favor of ratification, 121,655 shares, or less than a majority of the outstanding stock, were voted by Jaroff, his associates, or persons whom Jaroff claimed had been orally informed of the terms of the stock option agreement.

Plaintiff also contends that 14,207 shares were held by stockholders who had received the misleading notice of meeting but as to whom there was no contention of corrective oral disclosure, so that, even assuming the efficacy of the oral disclosure, the untainted affirmative vote (122,030 shares) was short of a majority. Armed with these additional facts, plaintiff, allegedly hampered by defendants' lack of cooperation in furnishing certain documents as agreed during Jaroff's deposition, was in the process of preparing a renewal of its motion for summary judgment when,

[1] "including (1) the number of shares covered in the option agreement (approximately 40% of the total number of Techmation shares then outstanding); (2) the option price (which on the date of the "Notice of Special Meeting" to shareholders was 60% of the quoted asking price in the over-the-counter market); and (3) the obligation of Techmation, when it next registered shares under the Securities Act of 1933 for issuance to the public, to register at its own expense the shares covered by the option agreement." 271 F.Supp. at 380.

on October 9, 1967, before any stock had been issued under the option agreement, Techmation's board of directors and Jaroff cancelled the agreement, thus accomplishing the object of plaintiff's action.

In reply to defendants' contention that cancellation of the option agreement rendered this action moot, plaintiff contends that the action continues to exist for the purpose of determining counsel fees. Defendants argue that if an action is otherwise moot, jurisdiction will not be retained to decide such incidental matters, and that plaintiff should be relegated to a plenary action to recover counsel fees, where defendants will be entitled to a jury trial.

The claim that defendant would be entitled to a jury trial in a plenary action to recover counsel fees is at best doubtful, see Dottenheim v. Emerson Elec. Mfg. Co., 7 F.R.D. 343 (E.D.N.Y. 1947). In any event, while the matter of counsel fees is not sufficient to prevent an action otherwise moot from being dismissed, the Court has the power, in dismissing an action as moot, to award counsel fees where appropriate. Plaintiff's demand for counsel fees may be considered by the Court as an ancillary matter and it is not necessary to relegate plaintiff to a separate action to recover fees. Schechtman v. Wolfson, 244 F.2d 537 (2d Cir. 1957).

Although § 10(b) does not expressly authorize an award of counsel fees,

"jurisdiction over the main cause of action necessarily carries with it jurisdiction, in the exercise of the 'historic equity jurisdiction of the federal courts,' Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 164, [59 S.Ct. 777, 83 L.Ed. 1184] to award fees and expenses in appropriate situations to counsel for a successful plaintiff." Angoff v. Goldfine, 270 F.2d 185, 186 (1st Cir. 1959).

An award of counsel fees may be made for the same reasons as in a derivative action under § 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A.

§ 78p(b), also silent on the subject of counsel fees, where a stockholder

"is entitled to reimbursement for reasonable attorney's fees on the theory that the corporation which has received the benefit of the attorney's services should pay the reasonable value thereof." Smolowe v. Delendo Corp., 136 F.2d 231, 241, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

That plaintiff has not won a judgment does not preclude the award of counsel fees.

"The modern equity practice is to allow counsel fees to successful prosecutors of derivative suits although no judgment has been obtained if they show substantial benefit to the corporation through their efforts * * *. Nor is it necessary that a cash fund be produced." Schechtman v. Wolfson, supra, 244 F.2d at 540.

And see Gilson v. Chock Full O'Nuts Corp., 331 F.2d 107 (2d Cir. 1964) (in banc); Dottenheim v. Emerson Elec. Mfg. Co., 7 F.R.D. 195 (E.D.N.Y.1947).

To be entitled to an award of counsel fees, plaintiff is required to show substantial benefit to the corporation as a result of his attorney's services, and it is not enough merely to demonstrate the probability of ultimate success in establishing that stockholder approval of the option agreement was indeed obtained in violation of § 10(b). Plaintiff must prove that cancellation of the agreement conferred upon Techmation an actual, practical benefit in the business sense. See Schechtman v. Wolfson, supra. The option agreement obligated Techmation to issue stock to Jaroff in an amount equal to 40% of the then outstanding shares at 60% of the current market price, see n. 1, supra, so that cancellation of the agreement benefited Techmation by relieving it of this obligation. Defendants argue that Techmation's obligation under the agreement was offset by a corresponding benefit in the creation of a greater incentive to Jaroff to generate earnings without the effect of adding to the net loss figure on Techma-

tion's balance sheet which an increase in cash salary would have had. While this factor may affect the amount of the benefit to the corporation, the Court is not persuaded, in the absence of stockholder approval lawfully obtained, that the benefits of the agreement equalled its detriments, and concludes that, on the whole, its cancellation was of some benefit to the corporation.

Defendants' principal argument is that even if cancellation of the option agreement was of substantial benefit to Techmation, plaintiff is not entitled to an award of counsel fees because this benefit resulted not from plaintiff's efforts in this litigation but from an unrelated act of Jaroff and the board of directors done (albeit when plaintiff was preparing a renewal of its motion for summary judgment) to satisfy a condition required by Bernard Glieberman and his associates, with whom Jaroff began negotiating in September 1967 for proposed substantial equity investment. Compare Schechtman v. Wolfson, 141 F.Supp. 453 (S.D.N.Y.1956), affd., supra. In support of this contention, defendants have submitted affidavits of Jaroff and Glieberman to the effect that Glieberman insisted on cancellation of the option agreement in order to assure him approximately equal voting control with Jaroff and Donald Litt, another large stockholder.

In response, plaintiff argues that since the pendency of this action, admittedly known to Glieberman, was a sufficient motive for him to demand cancellation, and since Glieberman's alleged conditions with regard to voting power could have been met short of cancellation of the option agreement by amendment rendering the stock subject thereto non-voting, the probability of success in this action (as indicated by the decisions of Croake and Bonsal, JJ., and the additional facts developed in Jaroff's deposition of August 9, 1967) caused or substantially contributed to the cancellation of the option agreement in order to avoid payment of plaintiff's counsel fees. The Court concludes that defendants' cancellation after plaintiff had prosecuted its action to the brink of success provides a sufficient basis for an inference that the cancellation was in fact due to plaintiff's efforts. Therefore, a hearing is required by Civil Rule 11 of this Court, which provides:

"Fees for attorneys or others shall not be paid upon the recovery or compromise in a derivative or class action on behalf of the corporation or class except as allowed by the court after a hearing upon such notice as the court may direct. * * *"

The mootness of the action except for determination of counsel fees does not render the foregoing rule inapplicable, since the term "recovery" as used therein refers to the realization of any substantial benefit as a result of the action. Accordingly, decision on the issue of whether plaintiff's efforts in this litigation caused or substantially contributed to cancellation of the option agreement is reserved pending a hearing in Room 35 on February 19, 1968, at 10:00 A.M. on all outstanding matters relating to plaintiff's demand for counsel fees. Notice of the hearing is directed to be given by Techmation to its stockholders in a manner to be approved by the Court. See Berkwich v. Mencher, 239 F.Supp. 792, 794 (S.D.N.Y.1965).

The motion to dismiss the action as moot is granted effective as of the determination of plaintiff's cross-motion for fees, decision on which is reserved pending the hearing indicated above.

Settle order.